IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| SHIRLEY FAYE MILLER, | ) | |
| as Personal Representative of the Estate | ) | |
| of Homer Thomas, deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:10cv583-WHA-WC |
| | ) | (WO) |
| CORRECTIONAL MEDICAL SERVICES, | ) | |
| INC.; PRISON HEALTH SERVICES, INC.; | ) | |
| MHM CORRECTIONAL SERVICES, INC.; | ) | |
| MICHAEL EDWARD ROBBINS, M.D. | ) | |
| JAMES V. RICHARDSON, M.D.; HUGH | ) | |
| M. HOOD, M.D.; WARREN HARDY | ) | |
| SCOTT, M.D.; MARIANNE BAKER; | ) | |
| VALENCIA W. LOCKHART,[1] | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.  INTRODUCTION**

This case is before the court on a Motion to Dismiss  or, in the Alternative, for a More

Definite Statement (Doc. #2) filed by Defendants Correctional Medical Services; Michael

Edward Robbins, M.D.; Marianne Baker; James V. Richardson, M.D.; Hugh M. Hood, M.D.;

and Valencia W. Lockhart on July 13, 2010; and a Motion to Dismiss or, in the Alternative, for a

More Definite Statement (Doc. #45) filed by Defendants MHM Corrective Services, Inc. and

Warren Hardy Scott on August 10, 2010.

---

[1]The caption of this case has changed because the court dismissed former Defendants
John Cummins/Cummings and Freddie Butler from the case on September 1, 2010.  (Doc. #51).
The original caption of this case was *Miller v. Cummings*.

The Plaintiff filed a Complaint in this case in the Circuit Court of Montgomery County, Alabama on June 3, 2010 bringing two claims.  First, Plaintiff brings a state law claim for wrongful death under Alabama Code § 6-5-410 (Count I) against Defendants Correctional Medical Services, Inc. ("CMS"), Prison Health Services, Inc. ("PHS"), MHM Correctional Services, Inc. ("MHM"), Michael Edward Robbins, M.D. ("Robbins"), Warren Hardy Scott, M.D. ("Scott"), Marianne Baker ("Baker"), Valencia W. Lockhart ("Lockhart"), and fictitious parties.[2]  Second, Plaintiff brings a 42 U.S.C. § 1983 claim for violation of the Eighth and Fourteenth Amendments (Count II) against Defendants Robbins, James V. Richardson, M.D. ("Richardson"), Hugh M. Hood, M.D. ("Hood"), Scott, Baker, Lockhart, and fictitious parties.[3]  Defendants subsequently removed this case to this court on July 7, 2010, on the basis of federal question jurisdiction.  No motion to remand was filed, and this court has subject matter jurisdiction.

For reasons to be discussed, the Motions are due to be GRANTED IN PART.

## II. <u>MOTION TO DISMISS STANDARD</u>

---

[2] The fictitious parties named in both counts of the Complaint are due to be dismissed with prejudice, because fictitious party pleading is generally not permitted in federal court.  *See, e.g.*, *New v. Sports and Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997); *Hester v. Lowndes County. Comm'n*, No. 2:06CV572-WHA, 2006 WL 2547430, at *9 (M.D. Ala. Sep 01, 2006).

[3] Plaintiff originally brought her § 1983 claim against John Cummins and Freddie Butler, as well as the Defendants named above.  However, on September 1, 2010, Plaintiff filed a Notice to Dismiss with respect to John Cummins and Freddie Butler, and on September 1, 2010, the court entered an Order dismissing both Defendants.  (Doc. #51.)

The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). In analyzing the sufficiency of pleading, the court is guided by a two-prong approach: one, the court is not bound to accept conclusory statements of the elements of a cause of action and, two, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to entitlement to relief. *See Ashcroft v. Iqbal,* _ U.S. _,  129 S. Ct. 1937, 1949-50 (2009). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations," but instead the complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. The factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 555.

## III. <u>FACTS</u>

The allegations of the Plaintiff's Complaint are as follows:

In 2007, Homer Thomas ("Thomas") was incarcerated in the Alabama Department of Corrections. At that time, Thomas suffered from a variety of health conditions. When he was initially incarcerated, Thomas was placed in the Alabama Department of Corrections Kilby Correctional Facility ("Kilby Facility") in Montgomery, Alabama. While there, Thomas received "various medical treatments and health reviews" by a number of individuals, including Robbins, Lockhart, and Baker, all of whom were "believed to be in the employ of CMS, PHS

and/or MHM".  (Compl. ¶ 7.)  On April 29, 2008, "and for a substantial period of time prior to

that date while held in the Kilby facility," Thomas began showing signs of "decubitus ulcer[4]

formation on his heels, coccyx," and other places on his body.  (*Id.* ¶ 8.)

Subsequently, on May 14, 2008, Thomas was transferred from the Kilby Facility to the

Alabama Department of Corrections Hamilton Aged and Infirm facility in Hamilton, Alabama

("Hamilton Facility").  While at the Hamilton Facility, Thomas was under the primary care of

Richardson, Scott, and Hood, all of whom were "believed to be in the employ of CMS, PHS

and/or MHM." (*Id.* ¶ 9.)  During his time at the Hamilton Facility, Thomas continued to exhibit

signs of decubitus ulcers, and also developed blood blisters on both of his heels.

During his time at both the Kilby Facility and the Hamilton Facility, Thomas received

some medical treatment, though it was not extensive.  Thomas's treatment included skin

coverings, an application of Desitin diaper rash ointment, bilateral heel boots, a prescription for

the drug Risperdal, a prescription for the drug Remeron, temperature reports, and treatment from

physicians.  (*Id.* ¶¶ 8-15.)  However, the records of Thomas's treatment were sparse, as they did

not mention any "grading" of his ulcers, descriptions of the size or grade of his ulcers, or wound

care evaluations by any doctor with a specialty in wound care.  (*Id.* ¶¶ 8-15.)  Additionally, some

records and physician's orders were conflicting, for instance, records state that Thomas had high

blood pressure, but other records describe Thomas having low blood pressure events.  (*Id.* ¶ 13.)

Moreover, some records show that Thomas had ulcers or a high temperature or other medical

---

[4]Decubitus ulcers are commonly known as "bed sores," "pressure sores," or "pressure ulcers," and are defined as "localized injury to the skin and/or underlying tissue usually over a bony prominence, as a result of pressure, or pressure in combination with shear."  (Pl. Resp. to Order to Show Cause (Doc. #38) at 6).

events without any records of follow-up examinations or treatment.  (*Id.* ¶ 11.)  Furthermore, on

May 15, 2008 and June 5, 2008, Thomas was allegedly improperly prescribed two psychiatric

drugs called Risperdal and Remeron, respectively, by Defendant Scott, a psychiatric professional

at the Hamilton Facility.  (*Id.* ¶ 13.)

On June 7, 2008, at 11:10 a.m., a fellow inmate pushed Thomas, who was in a wheelchair

at the time, into a treatment room at the Hamilton Facility.  Thomas's vital signs were weak, and

he was transferred to the North Mississippi Medical Center in Hamilton, Alabama, where he died

at approximately 10:30 p.m.  The official cause of Thomas's death was "hypotension due to

sepsis[5]."  (*Id.* ¶ 14.)  Plaintiff contends that Thomas's sepsis-induced death was caused by

Defendants' failure to properly treat his decubitus ulcers.  (Pl.'s Resp. to Order to Show Cause

(Doc. #38) at 5.)

After Thomas's death, Shirley Faye Miller ("Plaintiff") was appointed as Thomas's

Estate's personal representative.  Subsequently, she brought this action against Defendants.


## IV. <u>DISCUSSION</u>

**A.    Analytical Framework**

---

[5]Sepsis is a blood-borne infection that can be caused by decubitus ulcers.  (Pl. Resp. to
Order to Show Cause (Doc. #38) at 7.)

This case involves two separate Motions to Dismiss or, in the Alternative, for a More Definite Statement[6] made by two different sets of Defendants.[7]  The first Motion (Doc. #2), made by Defendants CMS, Robbins, Baker, Richardson, Hood, and Lockhart, and joined by all of the remaining Defendants in the second Motion, contends that Plaintiff has (1) failed to state a claim under Alabama law for wrongful death; and (2) failed to state a claim under 42 U.S.C. § 1983 for a violation of the Eighth and Fourteenth Amendments.  The second Motion (Doc. #45), made by Defendants MHM and Scott, also contends that Plaintiff has (1) failed to state a claim; (2) Plaintiff's allegations against them lack specificity of causation; and (3) failed to state a plausible claim.

Since the only federal claim in this case is Plaintiff's § 1983 claim, the court will address only that claim at this time.


**B.      Section 1983 Claim**

Plaintiff alleges, in her § 1983 claim, that Defendants violated Thomas's right to be free from cruel and unusual punishment, as guaranteed by the Eighth Amendment and incorporated against the states through the Fourteenth Amendment, through their deliberate indifference to Thomas's serious medical need.  The Defendants respond that Plaintiff has not successfully pled such a claim.

---

[6]Originally, former defendants John Cummins and Freddie Butler filed a Motion to Dismiss (Doc. #42) on qualified immunity grounds.  As these former defendants have been dismissed from the case, the Motion is moot and due to be denied on that basis.

[7]As the court is only addressing the Motions to Dismiss with respect to Plaintiff's § 1983 claim, the court will refer to "Defendants" as the defendants whom Plaintiff is suing under § 1983.

To bring a § 1983 claim, Plaintiff must show that (1) each defendant acted "under color of state law;" and (2) the conduct deprived the plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States."  *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1225 (11th Cir. 2006) (quoting *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)) (internal punctuation and citations omitted).  A defendant acts under color of state law when he or she "acts with authority possessed by virtue of his employment with the state."  *Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1303 (11th Cir. 2001).

In their Motions, the Defendants do not dispute Plaintiff's allegation that they acted under color of state law.  Therefore, the Court will consider whether Defendants' alleged conduct deprived Thomas "of rights, privileges, or immunities secured by the Constitution or laws of the United States."

Plaintiff's § 1983 claim is substantively based on the law of the Eighth Amendment as incorporated against the states by the Due Process Clause of the Fourteenth Amendment.  *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citing *Robinson v. California*, 370 U.S. 660 (1962)).  The Eighth Amendment reads: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."  U.S. CONST. AMEND. VIII.

In this case, Plaintiff alleges that Thomas's Eighth Amendment rights were violated due to the Defendants' "failures to provide necessary medical services."  (Compl. ¶ 19.)  In an Eighth Amendment case alleging a failure to provide necessary medical services, to prevail, a plaintiff must show "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury."  *Mann v. Taser Int'l, Inc.*,

588 F.3d 1291, 1306-07 (11th Cir. 2009) (citing *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007)).

Plaintiff satisfies the first requirement, as she adequately alleges that Thomas had a serious medical need.  A serious medical need is a need that "if left unattended, poses a substantial risk of serious harm," *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003), and either "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention . . . [or alternatively], a serious medical need is determined by whether a delay in treating the need worsens the condition."  *Mann*, 588 F.3d at 1306-07 (citing *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994)).  In this case, Plaintiff alleged that Thomas died as a result of an infection caused by decubitus ulcers.  (Compl. ¶¶ 8, 10-14.)  Such an allegation constitutes a serious medical need because it "poses a substantial risk of serious harm," and "a delay in treating the need worsens the condition."  *See Lawson v. Dallas County.*, 286 F.3d 257, 262 (5th Cir. 2002) (finding that the risk of developing decubitus ulcers is a serious medical need).

Plaintiff does not, however, satisfy the second requirement, because she does not satisfactorily allege "deliberate indifference" by the Defendants.  Deliberate indifference is not equivalent to "medical malpractice."  *See, e.g.*, *Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) (contrasting deliberate indifference to a prisoner's serious medical needs with medical malpractice).  To properly allege deliberate indifference, a plaintiff must allege that each defendant "(1) had subjective knowledge of a risk of serious harm; (2) disregard[ed] that risk; and (3) acted with more than gross negligence."  *Harper v. Lawrence County., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010) (citing *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008)).

To put it another way, "[t]here is no liability for 'an official's failure to alleviate a significant risk that he should have perceived but did not,'" *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996), or for the fact that "'more should have been done' to diagnose and treat [an injury]." *Campbell*, 169 F.3d at 1363. Moreover, "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. *Each individual Defendant* must be judged separately and on the basis of what that person knows." *Harper*, 592 F.3d at 1234 (emphasis added) (citations and internal punctuation omitted) (citing *Burnette*, 533 F.3d at 1331); *Cook ex rel. Estate of Tessier v. Sheriff of Monroe County., Fla.*, 402 F.3d 1092, 1116 (11th Cir. 2005) ("[N]either respondeat superior nor vicarious liability exists under § 1983.").

The principal problem with Plaintiff's Complaint is that Plaintiff simply alleges that Thomas was not properly diagnosed and was not properly treated by the Defendants. Plaintiff's major allegations include that (1) on April 29, 2008, Thomas exhibited signs of decubitus ulcer formation on his body, and that Defendants should have known this was a serious health risk (Compl. ¶ 8); (2) only a few medical records exist regarding Thomas's ulcers and his medical treatment, and some of these records are misdated, conflicting, or confusing (*Id.* ¶¶ 10, 12); (3) Thomas's only treatment received from April 28 until May 15, 2008 was an order for bilateral heel boots and an application of Desitin diaper rash ointment to his heels (*Id.* ¶ 11); (4) notes state that "Thomas was suffering from high blood pressure for which medication was issued, but at the same time reflect reports of low blood pressure incidents" (*Id.* ¶ 13); and (5) Thomas was misprescribed a drug (*Id.* ¶ 13). Plaintiff summarized why she claims these and similar allegations constituted deliberate indifference by stating that

> "The defendants acted with deliberate and willful indifference in their failures to
> provide necessary medical services including: (a) adequate, proficient or timely

9

examinations . . . (b) appropriate monitoring, grading, recording and reporting of numerous medical conditions . . . (c) appropriate plans of care and medical intervention . . . (d) assessment of underlying medical conditions prior to administering psycho-affective drugs with known hypotensive side effects; and (e) following internal policies and protocols for patient records, monitoring, and treatment." (*Id.* ¶ 19.)

While these allegations may show "gross negligence" or "medical malpractice" by the Defendants, none of these allegations show "deliberate indifference." *See Harper*, 592 F.3d at 1234 (holding that more than gross negligence is required for an actionable deliberate indifference claim). Indeed, Plaintiff admits that Thomas received treatment, which included skin coverings, an application of Desitin diaper rash ointment, bilateral heel boots, a prescription for the drug Risperdal, a prescription for the drug Remeron, temperature reports, and treatment from physicians. (Compl. ¶¶ 8-15.)

In other words, Plaintiff's Complaint simply alleges that "more should have been done," which is not sufficient to state a claim for deliberate indifference. *See Campbell*, 169 F.3d at 1363 (internal punctuation omitted); *see also Stewart v. Murphy*, 174 F.3d 530, 534-36 (5th Cir. 1999) (holding that it was possibly negligence, but not deliberate indifference, for the defendant doctors to fail to (1) discover a decubitus ulcer during a decedent's stay in the hospital, despite a later physician stating that decedent had "the worst bedsores she had ever seen;" (2) read nurses' medical notes and, as a result, to fail to prescribe antibiotics for an infection listed in the notes; and (3) follow up to ensure that orders were carried out).

Moreover, and perhaps more critically, Plaintiff's Complaint does not adequately allege that each Defendant was individually "deliberately indifferent" with respect to Thomas's health issues. Instead, Plaintiff alleges in a conclusory manner that all Defendants "acted with deliberate and willful indifference" (Compl. ¶ 19), and that all Defendants "had direct

knowledge . . . either through direct contact with Homer Thomas or through reports . . . and/or internal corporate audits" (*Id.* ¶ 21).  Because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference . . . . [and] [e]ach individual Defendant must be judged separately and on the basis of what that person knows,"  *Harper*, 592 F.3d at 1234 (11th Cir. 2010), these allegations fall short of a plausible claim of deliberate indifference.[8]

Because the Plaintiff has not adequately alleged deliberate indifference, the court will not analyze the issue of whether Plaintiff has adequately alleged causation at this time.[9]  However, if the Plaintiff chooses to replead, the Plaintiff must show how each Defendant's alleged deliberate indifference was the legal cause of Thomas's death.  In particular, and for example, Plaintiff should ensure that she alleges with sufficient specificity how Defendant Scott's psychiatric treatment of Thomas is causally connected to his eventual death.  Of course, Plaintiff must make any allegations within the strictures of Rule 11 of the Federal Rules of Civil Procedure.

## C.    Repleading

---

[8]Plaintiff also makes some more specific, but also conclusory, allegations that certain Defendants had knowledge of Thomas's health problems.  For example, Plaintiff alleges that certain Defendants treated Thomas at various times, and implies that they must have had knowledge of his health problems.  (*See* Compl. ¶ 7-14).  None of these allegations indicates which of these Defendants was aware of Thomas's health problems, much less which of these Defendants was deliberately indifferent to these problems.  The only specific allegation Plaintiff makes about one of the Defendants is that Defendant Scott allegedly improperly prescribed a drug to Thomas.  (*Id.* ¶ 13.)  Such an allegation is insufficient to amount to deliberate indifference, because, based on the information provided in the Complaint, it amounts to negligence or gross negligence at most.

[9]The issue of causation was raised by both Motions.

In sum, the court finds Plaintiff's § 1983 claim insufficient.  The court, however, will dismiss Count II without prejudice, and Plaintiff will be given time to amend her Complaint to sufficiently state a cause of action.  Should she choose to do so, Plaintiff must clearly allege, with factual support, (1) how *each* Defendant, separately, was "deliberately indifferent" to Thomas's serious medical needs; and (2) how this deliberate indifference *caused* Thomas's death.  Plaintiff may not rely on blanket allegations such as: "The defendants acted with deliberate and willful indifference" (Compl. ¶19).  If Plaintiff chooses to file an amended complaint, the amended complaint must be complete unto itself and may not adopt by reference any prior complaint or portion thereof  (L.R. 15.1).  In addition, should Plaintiff choose to file an amended complaint, she should keep in mind that she must make her allegations within the strictures of Rule 11 of the Federal Rules of Civil Procedure.  If the Complaint is not amended by the deadline given, the court will dismiss Count II with prejudice at that time.

## V. <u>CONCLUSION</u>

For the foregoing reasons, it is hereby ORDERED as follows:

(1) Defendants' Motions (Doc. ## 2 and 45) are GRANTED as to Plaintiff's § 1983 claim asserted against Defendants, and those claims are DISMISSED without prejudice.

(2) Plaintiff is given **until September 30, 2010**, to file an Amended Complaint, if she chooses to do so.

(3) Defendant John Cummins and Defendant Freddie Butler's Motion to Dismiss (Doc. #42) is DENIED as moot.

Done this 16th day of September, 2010.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE